UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-00326-TBR

UNITED SPECIALTY INSURANCE
COMPANY,                                                                    PLAINTIFF

v.

COLE'S PLACE, INC.,                                                       DEFENDANT

## MEMORANDUM OPINION

This matter is before the Court on motions from both parties. First, Plaintiff United Specialty Insurance Company filed a motion for summary judgment, [DN 15.] Defendant Cole's Place, Inc. responded, [DN 19], and Plaintiff replied, [DN 21.] Second, Defendant filed a motion to dismiss, [DN 16.] Plaintiff responded, [DN 20], and Defendant replied, [DN 22.] Fully briefed, these motions are ripe for consideration. For the reasons discussed below, Defendant's motion to dismiss is **DENIED** and Plaintiff's motion for summary judgment is **GRANTED**. The Court will issue a separate Order and Judgment consistent with this Memorandum Opinion.

## I.  BACKGROUND

This Declaratory Judgment action arises out of a commercial liability insurance policy between Plaintiff United Specialty Insurance Company ("USIC") and Defendant Cole's Place, Inc. ("Cole's Place"). In this action, USIC seeks a declaratory judgment finding that it has no obligation to defend or indemnify Cole's Place in personal injury lawsuits that are ongoing against Cole's Place in Kentucky state court.

Cole's Place owns and operates a nightclub in Louisville, Kentucky. [DN 1 at 5 (Complaint).] On July 19, 2015, a shooting took place at Cole's Place which injured several of its patrons. [*Id.*] "In September 2015, a Jefferson County grand jury indicted Kevon Taylor (not a

party to this [federal] action) on three counts of assault in the first-degree and five counts of assault in the second-degree in connection with the shooting. In December 2015, Mr. Taylor pled guilty to eight counts of assault in the second-degree and is currently serving time in prison." [*Id.*] Both parties agree that Kevon Taylor was the shooter at Cole's Place on July 19, 2015. [*Id.*; DN 16 at 5.]

As a result of the shooting, four civil personal injury lawsuits were filed against Cole's Place in Kentucky state court. [DN 1 at 5.] The plaintiffs in those actions are Kendall Latrell Starks; De-Auntay Shrivers; Lanisha Walker, Wayne Woods and M.W.; and Jessie Offutt. [*Id.*; DN 16 at 4.] The four state court cases against Cole's Place have been consolidated into the first action, *Kendall Latrell Starks v. Cole's Place, Inc.*, Case No. 15-CI-005424 (hereinafter the "State Court Action"). [DN 1 at 5.] The plaintiffs in the State Court Action "allege they were injured in the shooting and that their injuries were proximately caused by alleged acts and/or omissions on the part of Cole's Place." [*Id.*] Specifically, the plaintiffs bring claims for intentional infliction of emotional distress; negligence; negligent hiring, training, retention, and supervision; and punitive damages. [*See* DN 1-2 (State Court Complaints).] Cole's Place filed a third party complaint against Kevon Taylor alleging that Taylor "was the individual who actually did the shooting," that Taylor "has pleaded guilty to charges arising from the shootings," and that his actions were "the sole and proximate cause of the injuries and damages complained of by the various plaintiffs in this action." [DN 15-2 at 2 (Third Party Complaint).]

USIC is currently defending Cole's Place in the State Court Action, but under a reservation of rights. [DN 1 at 2.] USIC contends that the terms of the "Commercial Lines Policy," ("the Policy"), between it and Cole's Place do not obligate USIC to defend or indemnify Cole's Place in the State Court Action because the claims in that Action are for bodily injury

arising out of an assault or battery, a specific exclusion contained in the Policy. [*Id.* at 3–5, 6–8.] USIC further contends that it has no duty to indemnify Cole's Place for any claims for punitive damages, another exclusion in the Policy. [*See id.*] The Court will discuss the express language of the Policy and its exclusions below.

Prior to addressing the parties' coverage dispute, however, the Court must determine whether to exercise jurisdiction over this declaratory judgment action. In its motion to dismiss, Cole's Place argues that the Court should decline to exercise jurisdiction in this case and therefore that it should dismiss the suit. [DN 16.] In USIC's motion for summary judgment, USIC argues the opposite. [DN 15.] The Court will consider the parties' jurisdictional arguments first in order to determine if it can proceed to the merits of USIC's claims for declaratory judgment.

## II. STANDARD OF REVIEW: DECLARATORY JUDGMENTS

Pursuant to the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). The Act is an enabling act that "confers a discretion on the courts" to act "rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). In other words, the Act authorizes district courts to exercise jurisdiction, but does not impose a duty to do so. *Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*, 373 F.3d 807, 812 (6th Cir. 2004); *Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 276 (6th Cir. 1990), *abrogated on other grounds by Wilton v. Seven Falls Co.*, 515 U.S. 277, (1995). A district court may not decline jurisdiction, however, as a matter of whim or personal disinclination. *Mercier*, 913 F.2d at 277.

## III. DISCUSSION: JURISDICTION

### A. The Policy and its Exclusions

The Policy at issue in this case provides, in relevant part:

We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

[DN 1-1 at 15 (Commercial Lines Policy).] The Policy contains certain exclusions from coverage, such as the following "Assault and Battery" exclusion:

1. This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

   (a) any actual, threatened or alleged assault or battery;
   (b) the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;
   (c) the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;
   (d) the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;
   (e) the negligent:
       (i) employment;
       (ii) investigation;
       (iii) supervision;
       (iv) training;
       (v) retention;
       of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1. (a), (b), (c) or (d)** above;
   (f) any other cause of action or claim arising out of or as a result of **1. (a), (b), (c), (d) or (e)** above.

2. We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:
   (a) any actual or alleged injury arises out of any combination of an assault or battery related cause and a non-assault or battery-related cause.

**(b)** any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

**(c)** any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

**3.** For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

[*Id.* at 48.]

Also relevant to this case is the Policy's "Punitive Damages" exclusion:

**A.   In consideration of the premium charged this policy has been issued subject to the following exclusions being added to Coverages A & B:**

This insurance does not apply to:

\* \* \*

**5. Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees**
Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

[*Id.* at 43.]

In its motion for summary judgment, USIC argues that "[t]he Policy's exclusions are unambiguous and preclude coverage for the claims asserted against Cole's Place in the underlying state court Complaints." [DN 15 at 2.] Before the Court can consider the merits of this argument, however, it must first determine whether it should exercise jurisdiction over this declaratory judgment action.

The Sixth Circuit has identified five factors, often referred to as the "*Grand Trunk* factors," for courts to consider in determining whether the exercise of declaratory judgment jurisdiction is proper:

(1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in

issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Grand Trunk W. R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Court will address each factor in turn.

### B. Settlement of the Controversy and Clarification of Legal Relations

In insurance coverage cases, most courts consider the first two factors together because "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 555 (6th Cir. 2008). Confounding the analysis of these factors is the Sixth Circuit's acknowledgment that it has created two lines of cases which, at first blush, appear at odds. *See id.* One line of cases approved of declaratory actions because they can "settle the insurance coverage controversy," while a second line of cases disapproved of declaratory actions because while they "might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy." *Id.*

The Sixth Circuit explained that this incongruence results from the "different factual scenarios" that each line of cases presents. *Id.* "In the first line of cases, focusing just on the insurance controversy, a technical or legal issue is often at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Emplrs. Ins. Co. of Wausau v. Duro-Last Roofing, Inc.*, No. 11-10206-BC, 2011 WL 2119360, at *6 (E.D. Mich. Mat 27, 2011). "In the second line of cases, focusing on the controversy as a whole, resolution of disputed facts in the underlying case will also resolve the disagreement about coverage." *Id.*; *Flowers*, 513 F.3d at 555 (collecting cases); *Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am.*, 565 F. Supp. 2d 779, 786 (E.D. Ky. 2008). "In other words, a declaratory judgment is proper if it will

only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 WL 6804284, at *2 (W.D. Ky. Dec. 3, 2014) (citations and internal quotation marks omitted).

The parties disagree as to which line of cases fits this case. Cole's Place contends that a determination of whether the Assault and Battery Exclusion in the Policy applies "involves a fact-based analysis of state law issues," specifically, "[w]hether or not any of the state court plaintiffs were victims of an assault and battery." [DN 16 at 7.] According to Cole's Place, this requires a determination of whether Taylor's actions fall under the Kentucky definitions of the intentional torts of "assault" and "battery," which will require the Court to make factual determinations as to the state of mind of the shooter. [DN 19-1 at 8–13.] Additionally, Cole's Place argues that, because the alleged shooter, Kevon Taylor, is a third party defendant in the State Court Action but is not a party in this action, nor are any of the state court plaintiffs, the "Court does not have before it all the necessary parties to settle the controversy between the parties." [*Id.* at 8.]

USIC argues, however, that "[t]he issue before this Court is *not* whether it has been 'proven' that an assault and/or battery actually occurred." [DN 21 at 2 (emphasis added).] Rather, USIC relies on Kentucky and Sixth Circuit case law which provides that, "[u]nder Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the *allegations in the underlying complaint* with the terms of the insurance policy." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 507 (6th Cir. 2003) (emphasis added). According to USIC, therefore, the Court's only task in this case is to determine whether "the allegations in the underlying Complaints – regardless of their merit –

are unambiguously excluded from coverage under the Policy." [DN 21 at 2 (citing *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) ("The insurance company must defend any suit in which the language of the complaint would bring it within the policy coverage **regardless of the merit of the action**.")).] Here, "USIC contends it does not have a duty to defend Cole's Place because the underlying plaintiffs allege in their Complaints that their injuries resulted from a violent shooting attack, which inherently constitutes an 'assault' and/or a 'battery.'" [DN 21 at 3.] Finally, USIC argues that Cole's Place's "third-party complaint against Kevon Taylor is immaterial to this Court's resolution of the parties' coverage dispute," [DN 20 at 7–8], and therefore the fact that Taylor and the state court plaintiffs are not parties to this case is of no consequence.

The Court agrees with USIC that this case falls under the first line of cases discussed above; that is, "a technical or legal issue is [ ] at the heart of the coverage controversy, and to the extent the facts of the underlying case matter, they are undisputed." *Emplrs. Ins. Co.*, 2011 WL 2119360, at *6. Specifically, here, neither USIC nor Cole's Place disputes that the plaintiffs in the underlying State Court Action were shot at Cole's Place's nightclub. Additionally, neither party disputes that the plaintiffs are suing Cole's place as a result of that shooting. Most importantly, the issue of whether an assault and/or battery actually occurred is not before the state court, as Cole's Place asserts it is. Rather, the plaintiffs in the State Court Action have sued Cole's Place for intentional infliction of emotional distress; negligence; negligent hiring, training, retention, and supervision; and punitive damages, all arising out of the fact that they were shot at the nightclub. [*See* DN 1-2 (State Court Complaints).] Therefore, the factual issues before the state court relate only to whether Cole's Place acted unreasonably, negligently, intentionally, and/or maliciously in failing to adequately protect the plaintiffs when they were

patrons at the nightclub. The state court will have no occasion to determine whether the shooting constituted an actual assault or battery, because those issues are not before it. The fact that Cole's Place filed a third party complaint against Taylor in state court does not change this conclusion. Though, according to Cole's Place, Taylor filed an answer in the State Court Action denying being the shooter, [DN 19-1 at 10], this still does not put Taylor's state of mind in issue. At the very most, the state court may have to determine *whether* Taylor was the shooter. However, Taylor's state of mind, and whether Taylor committed an assault and battery, are not issues before that court.

Here, as USIC argues, the Court's only duty in determining the applicability of the Assault and Battery Exclusion is to determine whether the *allegations* in the underlying state court complaints arise out of assault and battery. *See Dibeneditto v. Med. Protective Co.*, 3 F. App'x 483, 485 (6th Cir. 2001) (citing *James Graham Brown Found.*, 814 S.W.2d at 279) ("Under Kentucky law, the determination of whether an insurance company has a duty to defend its insured is made by comparing the allegations in the complaint with the terms of the insurance policy.") Importantly, the plaintiffs in the State Court Action allege that Cole's Place acted unreasonably in failing to prevent or protect against the shooting. Accordingly, the state court will have no occasion to determine whether an assault or battery occurred. Rather, the fact-finding that must occur in the state court will focus solely on Cole's Place's acts and omissions and, with regard to Cole's Place's cross-claim against Taylor, whether Taylor was the shooter. Therefore, in order for this Court to determine the applicability of the assault and battery exclusion, any "fact-finding" that the Court may have to do "does not affect the parties in the underlying action." *State Farm Fire & Casualty, Company v. Fischer*, No. 3:16-CV-778-DJH, 2017 WL 4273303, at *2 (W.D. Ky. Sept. 26, 2017).

In *Flowers*, the Sixth Circuit explained that a district court's decision about coverage in a declaratory judgment action settles the controversy between the parties when the district court only decides issues related to insurance coverage, when the insurance company is not a party to the underlying state action, meaning the coverage issue is not pending before and cannot be decided by the state court, and when the coverage dispute "did not require the district court to inquire into matters being developed through state court discovery." *Flowers*, 513 F.3d at 556 (citing *Northland Ins. Co. v. Stewart Title Guar. Co.,* 327 F.3d 448 (6th Cir. 2003) and *Bituminous,* 373 F.3d at 808, 813–14). All of these circumstances are present here. If the Court exercises jurisdiction over USIC's declaratory judgment claims, it will only be deciding coverage issues. Additionally, USIC is not a party to the State Court Action, meaning the coverage issue is not before that court. Finally, the coverage dispute in this case requires the Court to look only to the allegations in the state court plaintiffs' complaints, and therefore will not require the Court to delve into matters that will be the subject of state court discovery. Accordingly, resolution of the coverage dispute here will settle the entire controversy between USIC and Cole's Place, "because the only controversy between them [is] the scope of the insurance policy." *Id.*

The situation here is in contrast from the one our sister court addressed in *State Farm Fire & Casualty, Company v. Fischer*. In that case, one student sued another "for an alleged assault that took place on a school bus." *State Farm*, 2017 WL 4273303, at \*1. There, the insurance policy at issue "contain[ed] an exclusion for bodily injury 'which is either expected or intended by the insured' or 'which is the result of willful and malicious acts of the insured.'" *Id.* The court explained that, to make a determination regarding coverage in that case, the "Court will have to determine whether the bodily injury at issue in the state-court proceeding was 'either

expected or intended by the insured' or 'the result of willful and malicious acts of the insured,'" and that, "[u]nder Kentucky law, whether an insured expected or intended damage resulting in an insurance claim is a question of fact for the jury." *Id.* at \*3. Additionally, in that case, the claims at issue in the underlying state court suit were for assault and battery, meaning that a determination as to coverage under the policy was intimately intertwined with the determination of whether the plaintiff could succeed on his claims in state court.

Here, however, a determination of whether the plaintiffs in the State Court Action have alleged injuries *arising from* assaults or batteries will not affect the resolution of their claims of tortious conduct committed by Cole's Place for failing to prevent or protect them against the shooting. Therefore, any determinations the Court may have to make in this case regarding assault and battery will not affect the State Court Action because those issues are not before the state court. Indeed, this Court previously held in *Secura Insurance Company v. Gray Construction Company* that, even when a district court must make a factual determination to determine coverage, the first *Grand Trunk* factor is still satisfied if "th[e] factual question is not one which will be ruled on by the state court in the underlying tort action." 661 F. Supp. 2d 721, 726 (W.D. Ky. 2009).

Turning toward the second *Grand Trunk* factor, as the Court noted above, "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 555. Here, the Court agrees that resolution of the coverage dispute will clarify the legal relationships at issue, "namely, the contractual duties . . . owed by [the insurer] to [its insured]." *Id.* at 557. The Court's decision about coverage in this case will "resolve[] all the issues regarding the legal relationships of the parties to th[is] declaratory action." *Id.* While the state court still must determine any liability Cole's Place may

have to the state court plaintiffs, this Court's decision "will not confuse the state court's analysis of those liability issues." *Id.* Accordingly, the Court finds that the first and second *Grand Trunk* factors support the Court's exercise of declaratory judgment jurisdiction.

### C. Procedural Fencing

Third, the Court must consider "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for *res judicata.*" *Id.* at 558. This factor "is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a "natural plaintiff" and who seem to have done so for the purpose of acquiring a favorable forum.' " *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)). Courts "are reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* Importantly, "[a] district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" *Id.* (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)).

There is no evidence to suggest that USIC's decision to seek a declaratory judgment in federal court was motivated by procedural fencing. Here, the state court plaintiffs filed their suits on October 9, 2015, March 7, 2016, March 16, 2016, and July 15, 2016, respectively. [*See* DN 1-2.] USIC did not file this suit until almost nine months after the last state court complaint was filed, and almost a year and a half after the first state court complaint was filed. *See Flowers*, 513 F.3d at 558 ("There is no evidence in the record that Scottsdale's action was motivated by procedural fencing. On the contrary, Scottsdale instituted this action several years after the state court proceedings began."). "Indeed, when the plaintiff has filed his claim after the state court litigation has begun, [the Sixth Circuit] ha[s] generally given the plaintiff 'the benefit of the

doubt that no improper motive fueled the filing of [the] action.'" *Id.* (quoting *Bituminous,* 373 F.3d at 814). In response, however, Cole's Place contends that the Court should look to the timing of the filing of its third party complaint against Taylor, which was filed on May 9, 2017. [DN 16 at 9.] According to Cole's Place, its suit against Taylor made the issue of assault and battery an issue in the State Court Action. [*Id.*] Cole's Place asserts that "[c]oincidently, three (3) weeks after the assault and battery issue was raised in the State Court, this action was filed by USIC on May 30, 2017 . . . The initiation of this case so close in time after the filing of the Third Party Complaint calls into question the true motives for USIC's filing of this declaratory judgment action." [*Id.* at 9–10.]

The Court finds this argument unpersuasive. As an initial matter, Cole's Place's third party complaint against Taylor did not assert claims for assault and battery, nor did it assert any claims requiring a determination of Taylor's state of mind. Rather, Cole's Place merely sued Taylor on the grounds that he "did the shooting" and therefore that he, rather than Cole's Place, should be liable to the state court plaintiffs. [DN 15-2 at 2–3.] Accordingly, the third party complaint did not put the issues of assault and battery or Taylor's state of mind in issue in the State Court Action. Moreover, even if the Court looks to the date of Cole's Place's third party complaint, USIC still brought the instant declaratory judgment action "*after* the state court litigation [ ] begun." *Flowers*, 513 F.3d at 558 (emphasis added). *Contrast Liberty Mut. Fire Ins. Co. v. Bohms*, 490 F. App'x 721, 726 (6th Cir. 2012) (Finding procedural fencing likely occurred when the state court plaintiff gave the insurer sixty days notice of intent to file suit, the insurer brought suit in federal court on the fifty-ninth day, and the plaintiff was then required to bring her state law claims as counter-claims in the federal suit). Here, without some evidence of procedural fending in the record, the Court will give USIC "the benefit of the doubt that no

improper motive fueled the filing of [the] action." *Flowers*, 513 F.3d at 558 (quoting *Bituminous,* 373 F.3d at 814). Therefore, the third *Grand Trunk* factor does not weigh against the exercise of jurisdiction.

### D. Increased Friction between Federal and State Courts

Fourth, the Court must consider "whether accepting jurisdiction would increase friction between federal and state courts." *Id.* at 559. On this point, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed. However, the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Id.* at 559–60 (internal citations and quotation marks omitted). The Sixth Circuit sets forth three additional sub-factors to provide guidance as to whether a declaratory judgment action would increase friction between state and federal courts:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
>
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
>
> (3) whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

*Id.* at 560 (citing *Bituminous*, 373 F.3d at 814–15).

The first sub-factor "focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Id.* For instance, if "resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court . . . the exercise of

jurisdiction would be inappropriate." *Id.* (citing *Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 272 (6th Cir. 2007)). As the Court stated above, however, any factual determinations the Court may have to make regarding the Policy's Assault and Battery Exclusion will not overlap with those at issue in the State Court Action. Here, to determine whether the exclusion applies, the Court must survey the allegations in the underlying complaints and determine whether those allegations fall within the exclusion. *See Westfield*, 336 F.3d at 507 ("Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy."). In the State Court Action, by contrast, the issues are whether Cole's Place acted negligently, maliciously, or intentionally in failing to prevent or protect against the shooting. With regard to Taylor, the third party defendant, the issue will be whether he must indemnify Cole's Place for any liability or whether any fault should be apportioned to him. These issues do not require any determination of whether an assault or battery occurred. Accordingly, this sub-factor weighs in favor of exercising jurisdiction.

"The second sub-factor focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. When "Kentucky law is controlling," courts generally "conclude that Kentucky courts are in the better position to apply and interpret its law on these issues." *Travelers*, 495 F.3d at 272; s*ee also Bituminous*, 373 F.3d at 815–16 ("Where as here, there are two potential unresolved questions of state law concerning state regulated insurance contracts, this consideration weighs against exercising jurisdiction."). Notably, however, "[t]his consideration appears to have less force when the state law is clear and when the state court is not considering the issues," such as "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to

defend [is] before the state court ... a decision by the district court on these issues would not offend principles of comity.'" *Flowers*, 513 F.3d at 560 (quoting *Northland*, 327 F.3d at 454). Here, even assuming that the Court must apply Kentucky courts' definitions of assault and battery, Kentucky law as to those torts is clear and does not involve any novel issues. *See, e.g.*, *Andrew v. Begley*, 203 S.W.3d 165, 171 (Ky. Ct. App. 2006) (quoting *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky. Ct. App. 2001) ("Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching."). Moreover, as the Court has stated repeatedly, the state court is not considering the assault and battery issues in the underlying State Court Action. Lastly, USIC is not a party to the State Court Action, and the insurance coverage dispute is not an issue pending before the state court. Accordingly, the second sub-factor also weighs in favor of exercising jurisdiction.

The third sub-factor "focuses on whether the issue in the federal action implicates important state policies and is, thus, more appropriately considered in state court." *Flowers*, 513 at 561. The Sixth Circuit has "found that 'issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" *Id.* (quoting *Travelers,* 495 F.3d at 273). This sub-factor, unlike the other two, does weigh against exercising jurisdiction. "Interpretation of Kentucky insurance contracts is guided by state public policy" and, "[d]espite the clear indications from the Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better position to resolve the insurance policy interpretation in this case." *Id.* However, because only one of the three sub-factors counsels against exercising jurisdiction, the Court does not find that the fourth *Grand Trunk* factor weighs against exercising jurisdiction over USIC's action.

### E.  Availability of Alternative Remedy

The fifth and final factor to be considered is whether a better or more effective remedy is available to the declaratory action plaintiff. *Grand Trunk*, 746 F.2d at 326. "[I]f an alternative remedy is better or more effective," the district court should decline to exercise jurisdiction. *Id.* Here, Cole's Place correctly points out that USIC had an alternative remedy; that is, Kentucky law allows for the filing of declaratory judgment actions. [DN 16 at 12.] *See* Ky. Rev. Stat. Ann. § 418.040 ("In any action in a court of record of this Commonwealth having general jurisdiction wherein it is made to appear that an actual controversy exists, the plaintiff may ask for a declaration of rights, either alone or with other relief; and the court may make a binding declaration of rights."). Cole's Place further argues that USIC could have instead waited until the conclusion of the State Court Action and then sought indemnity. [DN 16 at 2.]

Although Cole's Place is correct that these alternative remedies exist, "it is not clear whether such alternative remedies are *better or more effective* than a federal declaratory action." *Flowers*, 513 F.3d at 562. The Sixth Circuit has held that "our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* USIC asserts that, because Cole's Place has asserted counterclaims against USIC in this action, both for breach of contract and bad faith, federal court presents a more effective remedy because "[the] coverage issues – raised by both parties in this action – are not before any other court." [DN 15 at 15.] The Court finds this argument unpersuasive. If USIC had filed a declaratory judgment action in Kentucky state court, Cole's Place would have been equally as able to assert its counterclaims against USIC in that suit.

With regard to the option to file a declaratory judgment action in Kentucky courts, the Sixth Circuit has held that, "[i]n many ways, this alternative would have been better." *Flowers*,

513 F.3d at 562. Specifically, "[t]he Kentucky courts are in a superior position to resolve undecided questions of state law," and "Kentucky courts might also have been able to combine the two actions so that all issues could be resolved by the same judge." *Id.* On the other hand, "given that Kentucky precedent provides clear guidance as to the resolution of the legal issue presented, it cannot be said that the district court [is] a clearly inferior forum to resolve the issue" in this case. *Id.*

With regard to the alternative remedy of filing an indemnity action, "on the other hand, [this option] would not have been a superior alternative." *Id.* This is because USIC "would have been required to join the underlying state action" and then "would have had to wait until the liability issue in the case was resolved before determining its obligations toward [Cole's Place]. Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.*

When faced with the same conflicting alternative remedies in *Flowers*, the Sixth Circuit held that this factor "counsel[s] against exercising jurisdiction . . . [h]owever, it does not counsel so strongly against exercising jurisdiction that" exercising jurisdiction would constitute an "abuse[] [of] discretion." *Id.* 562–63. Accordingly, on the whole, the fifth *Grand Trunk* factor weighs against exercising jurisdiction.

### F. Balancing of the *Grand Trunk* Factors

Although the Sixth Circuit has not yet indicated the particular manner in which district courts should evaluate the *Grand Trunk* factors, *Flowers*, 513 F.3d at 563, the Court is satisfied that, on balance, it is proper for the Court to exercise its jurisdiction over USIC's declaratory judgment action. Here, four of the five *Grand Trunk* factors weigh in favor of the Court's exercise of jurisdiction in this case. Though one sub-factor and the fifth factor weigh against

exercising jurisdiction, the other factors outweigh those considerations. Therefore, the Court will exercise its jurisdiction over USIC's declaratory judgment action. Accordingly, Cole's Place's motion to dismiss is denied, and the Court will proceed to determine whether USIC is entitled to summary judgment on the merits of its claims for declaratory relief.

## IV. STANDARD OF REVIEW: SUMMARY JUDGMENT

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, reveals "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The Court "may not make credibility determinations nor weigh the evidence when determining whether an issue of fact remains for trial." *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001); *Ahlers v. Schebil*, 188 F.3d 365, 369 (6th Cir. 1999)). "The ultimate question is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Back v. Nestlé USA, Inc.*, 694 F.3d 571, 575 (6th Cir. 2012) (quoting *Anderson*, 477 U.S. at 251–52).

The moving party must shoulder the burden of showing the absence of a genuine dispute of material fact as to at least one essential element of the nonmovant's claim or defense. Fed. R. Civ. P. 56(c); *see also Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial." *Laster*, 746 F.3d at 726 (citing *Celotex*, 477 U.S. at 324). "[N]ot every issue of fact or

conflicting inference presents a genuine issue of material fact." *Street v. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). The test is "whether the party bearing the burden of proof has presented a jury question as to each element in the case." *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996). Nor will mere speculation suffice to defeat a motion for summary judgment: "[t]he mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment. A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## V. DISCUSSION: SUMMARY JUDGMENT

USIC contends that it is entitled to judgment as a matter of law because, pursuant to the Policy's Assault and Battery and Punitive Damages Exclusions, it is not obligated to defend or indemnify Cole's Place in the State Court Action. Under Kentucky law, "[t]he interpretation of an insurance contract is a matter of law." *Westfield*, 336 F.3d at 507 (citing *Stone v. Ky. Farm Bureau Mut. Ins. Co.,* 34 S.W.3d 809, 810 (Ky. Ct. App. 2000)); *see also Kentucky Ass'n of Ctys. Workers' Comp. Fund v. Cont'l Cas. Co.*, 157 F. Supp. 3d 678, 681 (E.D. Ky. 2016) ("In Kentucky, 'the interpretation of insurance contracts is a matter of law for the Court' to decide, and is appropriately determined through summary judgment when there are no other factual issues in dispute.") (citations omitted).

### A. The Assault and Battery Exclusion

USIC first moves for summary judgment on its first claim for declaratory relief, in which it seeks "a declaration that there is no coverage under the Policy for the claims against Cole's Place in the Injury Lawsuits, and that USIC does not have a duty to defend Cole's Place" against those claims. [DN 1 at 7.] USIC bases this claim on the Policy's Assault and Battery Exclusion.

As the Court stated above, the Assault and Battery Exclusion provides, in relevant part, as follows:

    **1.** This insurance does not apply to "bodily injury", "property damage", or "personal and advertising injury" arising out of or resulting from:

        **(a)** any actual, threatened or alleged assault or battery;

        **(b)** the failure of any insured or anyone else for whom any insured is or could be held legally liable to prevent or suppress any assault or battery;

        **(c)** the failure of any insured or anyone else for whom any insured is or could be held legally liable to render or secure medical treatment necessitated by any assault or battery;

        **(d)** the rendering of medical treatment by any insured or anyone else for whom any insured is or could be held legally liable that was necessitated by any assault or battery;

        **(e)** the negligent:
            **(i)** employment;
            **(ii)** investigation;
            **(iii)** supervision;
            **(iv)** training;
            **(v)** retention;
        of a person for whom any insured is or ever was legally responsible and whose conduct would be excluded by **1. (a), (b), (c) or (d)** above;

        **(f)** any other cause of action or claim arising out of or as a result of **1. (a), (b), (c), (d) or (e)** above.

    **2.** We shall have no duty to defend or indemnify any claim, demand, suit, action, litigation, arbitration, alternative dispute resolution or other judicial or administrative proceeding seeking damages, equitable relief, injunctive relief, or administrative relief where:

        **(a)** any actual or alleged injury arises out of any combination of an assault or battery related cause and a non-assault or battery-related cause.

        **(b)** any actual or alleged injury arises out of a chain of events which includes assault or battery, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury.

        **(c)** any actual or alleged injury arises out of assault or battery as a concurrent cause of injury, regardless of whether the assault or battery is the proximate cause of injury.

    **3.** For the purposes of this endorsement the words assault and battery are intended to include, but are not limited to, sexual assault.

[DN 1-1 at 48.]

Because the Policy does not define the terms "assault" and "battery," the parties dispute which definitions the Court should apply. In its motion for summary judgment, USIC contends that the Court should look to the dictionary definitions of those terms. [DN 15 at 20 (citing *Encompass Indem. Co. v. Halfhill*, No. 5:12-CV-00117, 2013 WL 6800682, at *4 n.1 (W.D. Ky. Dec. 20, 2013) (Russell, J.) ("Kentucky courts, both federal and state, routinely look to dictionaries for guidance on the interpretation of an unambiguous contractual term.").]

Cole's Place, on the other hand, contends that the Court must use Kentucky's definitions of the intentional torts of assault and battery. [DN 19-1 at 7–13.] For argument's sake only, and in light of the fact that "Kentucky law mandates that exclusions in insurance policies should be narrowly construed as to effectuate insurance coverage," *Aetna Cas. & Sur. Co. v. Com.*, 179 S.W.3d 830, 840 (Ky. 2005), *as modified on reh'g* (Jan. 19, 2006), the Court will assume Cole's Place is correct in this argument and will apply Kentucky tort law principles.

Cole's Place correctly states that "[u]nder Kentucky law to have either an assault or battery occur, the intent of the tortfeasor (to commit the act) must be proven." [*Id.* at 12.] According to Cole's Place, such intent cannot be proven here. Cole's place makes, in essence, three arguments in support of this claim. First, Cole's Place argues that Taylor, the alleged shooter, only entered an Alford Plea with regard to his criminal charges of second degree assault in state court, meaning that he has not admitted "the factual basis of [his] plea." [*Id.* at 9–11.] An Alford Plea allows "[a]n individual accused of crime [to] voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime." *North Carolina v. Alford*, 400 U.S. 25, 37 (U.S. 1970). Cole's Place asserts that "USIC cannot use an Alford Plea effectively as an

admission by the alleged shooter to prove that the injuries sustained by the State Court Plaintiffs were a result of an assault or battery." [*Id.* at 10.]

Second, Cole's Place contends that the fact that Taylor denies the allegations Cole's Place made against him in its third party complaint in state court likewise demonstrates that USIC cannot prove that an assault and battery took place. [DN 19-1 at 10.] In that complaint, Cole's Place alleged that Taylor "was the individual who actually did the shooting" and that Taylor "has pleaded guilty to charges arising from the shootings," and that his actions were "the sole and proximate cause of the injuries and damages complained of by the various plaintiffs in this action." [DN 15-2 at 2 (Third Party Complaint).] According to Cole's Place, Taylor has denied those allegations. [DN 19-1 at 10.]

Finally, Cole's Place argues that USIC cannot demonstrate the "intent" required for intentional torts in Kentucky because "[t]here are a plethora of plausible reasons, which may have been the cause of the discharge of the firearm (i.e., a malfunction of the firearm, accidental discharge of the firearm, loss of control of the firearm, etc.)." [DN 19-1 at 9.]

On the whole, however, Cole's Place misunderstands what is relevant in determining whether the exclusion applies. The law is clear that, in duty-to-defend cases, "a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the *allegations in the underlying complaint* with the terms of the insurance policy." *Westfield*, 336 F.3d at 507 (emphasis added). Crucially, the Court must look to the "the language of the complaint" to evaluate coverage "regardless of the merit of the action." *James Graham Brown Found.*, 814 S.W.2d at 279. Accordingly, it is irrelevant that Taylor has denied doing the shooting in the State Court Action. Whether Taylor was, in fact, the shooter on July 19, 2015 also has no bearing on the coverage issue. Rather, what is relevant is that, in the underlying

complaints, the state court plaintiffs have alleged that *someone*, regardless of who, violently attacked them at Cole's Place's nightclub. There is no indication from the plaintiffs' allegations that the shooting incident was accidental, however. The Court will not deny summary judgment solely based on Cole's Place's hypothetical suggestion that the shooting *could* have been accidental.

Under Kentucky law, "while intent is an essential element of battery, it refers to the consequences of an act, i.e. the contact, rather than the act itself," which means that "all consequences which the actor desires to bring about *are [deemed] intended* as well as consequences that are certain or substantially certain to result from the act." *Vitale v. Henchey*, 24 S.W.3d 651, 657 (Ky. 2000) (emphasis added) (citing Restatement (Second) of Torts § 8A (1965) Comment a–b). Similarly, "[t]he intent necessary for battery 'is not necessarily a hostile intent, or a desire to do any harm.' Rather, it is an intent to make contact with the person." *Id.* at 657–58 (citations omitted). Accordingly, the only thing the shooter must have intended was to make contact with *someone*, regardless of whom.

Here, the Court agrees with USIC that the allegations in the underlying complaints in the State Court Action sufficiently allege that the shooter intended to make contact with someone in the nightclub on July 19, 2015. In their complaints, the state court plaintiffs characterize the shooting as an "attack." [DN 1-2 at 7 (Starks Complaint); DN 1-2 at 18 (Walker, Woods, and M.W. Complaint)]; DN 1-2 at 26 (Offut Complaint).] Additionally, two of the state court complaints allege that Cole's Place had reason to know that the shooter was dangerous because,

> upon information and belief, on the same evening of the shooting but prior to the shooting described above, the person suspected of committing the shooting had instigated and participated in an altercation and/or argument with another unknown patron but was not removed from the premises by the Defendant despite the Defendant having notice and time to remove the suspected shooter.

[DN 1-2 at 17 (Walker, Woods, and M.W. Complaint)]; DN 1-2 at 25 (Offut Complaint).] In other words, the complaints allege that the shooting was a "foreseeable danger." [*See* DN 1-2 at 10, 11 (Shrivers Complaint).] All of these allegations, together, allege that the shooter attacked the plaintiffs and that Cole's Place should have had sufficient notice to remove the shooter prior to the shooting because he had been aggressive or violent earlier that night. None of the plaintiffs make any allegations that the shooting occurred as a result of "a malfunction of the firearm, accidental discharge of the firearm, [or] loss of control of the firearm," as Cole's Place now suggests was possible. [DN 19-1 at 9.] To the contrary, each of the plaintiffs contend that the shooter was dangerous, that he committed an "attack," and that it was or should have been foreseeable to Cole's Place that Taylor would exhibit "aggressive" and "violent" conduct. [*See, e.g.*, DN 1-2 at 19 (Walker, Woods, and M.W. Complaint) ("Defendant exacerbated said tort by failing to take reasonable steps to prevent the risk of harm to the Plaintiffs in an environment with a known history of violent, aggressive conduct.").]

USIC reasonably characterizes the possible scenarios that took place at Cole's Place on July 19, 2015:

> [T]he underlying allegations permit, at most, three possible scenarios – none of which would potentially be covered under the Policy. **First**, the alleged assailant could have intentionally shot the plaintiffs – which would obviously constitute a battery. **Second**, the alleged assailant could have intended to shoot someone other than the plaintiffs, but inadvertently injured the plaintiffs. That would also constitute a battery against the plaintiffs, under the doctrine of transferred intent. *See McGee v. Vanover*, 147 S.W. 742 (Ky. 1912) (wife had viable assault and battery claim for injuries from defendant's unintentional contact with her while defendant was battering her husband), *abrogated on other grounds, Osborne v. Keeney*, 399 S.W.3d 1, 15 (Ky. 2012); 13 David J. Leibson, *Kentucky Practice: Tort Law* § 1:3 (discussing *McGee* and transferred intent). The second scenario would additionally involve an assault against the shooter's intended victims. **Third,** the alleged assailant could have fired multiple shots intending to threaten **someone** with offensive contact, but inadvertently shot the plaintiffs. That would clearly constitute an assault, as in *Moonshine Saloon*. 228 F. Supp. 3d at 560. It would also be a tortious battery because the shooter's alleged conduct – like the

hypothetical man shooting a bullet into a crowd – was substantially certain to injure someone (and did, in fact, injure several people). *Cf. Graves*, 538 S.W.2d at 44.

[DN 21 at 9.] Accordingly, even accepting Cole's Place's argument that the court must define "assault" and "battery" using Kentucky courts' definitions for those intentional torts, the Court finds that the allegations in the underlying complaints sufficiently allege intent so as to bring the alleged shooter's actions within those definitions.

Comparing the allegations in the State Court Action to the express language of the Policy convinces the Court of this conclusion. *See Dibeneditto*, 3 F. App'x at 485 (Under Kentucky law, the determination of whether an insurance company has a duty to defend its insured is made by comparing the allegations in the complaint with the terms of the insurance policy."). The Policy broadly excludes coverage for any claims of bodily injury "*arising out of or resulting from . . . any actual, threatened or alleged* assault or battery" and any alleged "*failure . . . to prevent or suppress* any assault or battery." [DN 1-1 at 48 (emphasis added).] Additionally, the Policy excludes coverage for "the negligent: (i) employment; (ii) investigation; (iii) supervision; (iv) training; [or] (v) retention; of a person for whom any insured is or ever was legally responsible and whose conduct would" also be covered by the previous sections. [*Id.*]

Next, the Policy excludes coverage for "any other cause of action or claim arising out of or as a result of" the foregoing clauses. [*Id.*] Finally, the Policy precludes coverage, indemnity, and a duty to defend for "any actual or alleged injury arises out of *any combination* of an assault or battery related cause *and a non-assault or battery-related cause*" and "any actual or alleged injury arises out of a *chain of events which includes assault or battery*, regardless of whether the assault or battery is the initial precipitating event or a substantial cause of injury." [*Id.* (emphasis added).] Here, the Court is satisfied that the state court plaintiffs have alleged that the shooting

incident constituted intentional, tortious conduct so as to bring their claims against Cole's Place within the language of the Policy's Assault and Battery Exclusion.

Several courts in the Sixth Circuit and in other jurisdictions have applied assault and battery exclusions in similar factual scenarios. The Sixth Circuit has characterized exclusions that are routinely included in insurance policies, such as the assault and battery exclusion, as "sensible, routine, unambiguous, and specific." *Monticello Ins. Co. v. Kentucky River Cmty. Care, Inc.*, 173 F.3d 855 (6th Cir. 1999). In *Monticello*, the Sixth Circuit explained that the use of coverage exclusions such as those for assault and battery, illegal acts, or sexual abuse are reasonable because "it is perfectly sensible to exclude coverage for immoral or illegal acts." *Id.*

In *Essex Insurance Company v. Michigan Skatelands, Inc.*, the Sixth Circuit affirmed the district court's finding that an assault and battery exclusion applied to claims arising out of a shooting committed by third parties at the defendant's ice skating rink. 38 F.3d 1215 at *1–3 (unpublished). Though the insurance policy at issue in *Essex* also did not define the terms "assault" and "battery," the court explained that the exclusion was not ambiguous "because the Policy's Assault and Battery exclusion expressly and unambiguously denies coverage for any claim arising out of an assault and battery, and acts or omissions in connection with the prevention or suppression of an assault and battery." *Id.* at *3. The Court also explained that, although the "underlying claims against [the defendant] [were] breach of contract and negligence claims, the underlying claims clearly arose out of tortious conduct." *Id.* This logic applies equally here, where the underlying claims against Cole's Place are for intentional infliction of emotional distress, negligence, and punitive damages, but all such claims arise from the serious injuries the plaintiffs allege they suffered as a result of the shooting at Cole's Place's nightclub. [*See* DN 1-2 (State Court Complaints).]

Several district courts in the Sixth Circuit, including this Court, have likewise found assault and battery exclusions applicable. *See Certain Underwriters at Lloyds, London Subscribing to Policy No. LCL002439, Syndicate 4444 v. Patel*, No. 3:10-CV-00958, 2011 WL 2182445, at *7 (M.D. Tenn. June 3, 2011) (Finding the exclusion applicable and explaining that "Plaintiff's policy clearly excludes personal and property damages 'arising out of an assault and battery' or 'any omissions in connection with an assault and battery.' Defendant Patel's argument is that this language is ambiguous, but the Court deems this language to be comprehensive so as to exclude any claims related to these intentional torts."); *Century Sur. Co. v. Ken Bar, LLC*, No. 5:07-CV-70-R, 2009 WL 2602809, at *1 (W.D. Ky. Aug. 24, 2009), *as amended* (Dec. 8, 2009), *amended*, No. 5:07-CV-70, 2009 WL 4663901 (W.D. Ky. Dec. 8, 2009) (Russell, J.) ("Count 1 of the Underlying Action alleges that Defendant was negligent in hiring the employees who assaulted Wilson, resulting in her death. Under the plain language of the exclusion, Plaintiff is not required to provide coverage for Defendant's alleged negligent hiring of persons which resulted in the assault and battery of Wilson . . . The only factual allegations of sexual harassment are that Defendant's employees took Wilson into a hotel room and raped and killed her. This also falls squarely within the assault and battery exclusion."); *Monticello Ins. Co. v. Dismas Charities, Inc.*, No. 3:96-CV-550, 1998 WL 1969611, at *1 (W.D. Ky. Apr. 3, 1998) (Simpson, J.) ("It is clear that this exclusion was designed to prevent coverage on claims such as the ones made here . . . The exclusion states that the policy does not apply to any injury arising out of an assault or 'out of any act or omission in connection with the prevention or suppression' of the assault. Dismas cannot deny that Ford's negligence claim is based upon its alleged failure to prevent an assault by an inmate under its direction.").

Several other circuit and district courts outside of the Sixth Circuit have likewise applied the exclusion in similar factual circumstances. *See St. Paul Reinsurance Co. v. Riviello*, 296 F. App'x 377, 380 (4th Cir. 2008) (Affirming the district court's finding that insurance company had no duty to defend restaurant owner against patron's claims that he was assaulted at the restaurant, as such claims fell under the policy's assault and battery exclusion); *Jaycie, Inc. v. Acceptance Ins. Co.-Omaha*, 259 F. App'x 967, 968 (9th Cir. 2007) (Finding that an assault and battery exclusion applied to exclude coverage and duty to defend for claims related to injuries a patron sustained in a brawl at plaintiff's bar); *Bucci v. Essex Ins. Co.*, 393 F.3d 285 (1st Cir. 2005) (Finding sufficient evidence existed to infer that nightclub patron's injuries constituted battery so as to bring them within the policy's assault and battery exclusion); *Northfield Ins. Co. v. Queen's Palace, Inc.*, 252 F. Supp. 3d 161, 168 (E.D.N.Y. 2017) ("Regardless of whether the Estate asserts claims in the underlying action sounding in negligence, it is clear that those claims would not exist 'but for' the assault perpetrated against the decedent. Accordingly, the Assault and Battery Exclusion precludes coverage and plaintiff thus has no obligation under the policy to defend or indemnify.").

In sum, having considered the parties' arguments, the evidence, and the relevant law, the Court finds that the Assault and Battery Exclusion in the Policy applies in this case and relieves USIC of its duty to defend or indemnity Cole's Place in the State Court Action. Therefore, USIC's motion for summary judgment as to its first claim is granted.

### B. The Punitive Damages Exclusion

USIC next moves for summary judgment on its second claim for declaratory relief, in which it seeks "a declaration that there is no coverage under the Policy for any award of punitive

damages against Cole's Place in the Injury Lawsuits." [DN 1 at 8.] USIC bases this claim on the Policy's Punitive Damages Exclusion. That exclusion provides:

> This insurance does not apply to:
>
> * * *
>
> **5. Punitive, Exemplary Treble Damages or Multipliers of Attorneys' Fees**
> Claims or demands for payment of punitive, exemplary or treble damages whether arising from the acts of any insured or by anyone else for whom or which any insured or additional insured is legally liable; including any multiplier of attorney's fees statutorily awarded to the prevailing party.

[DN 1-1 at 43.] In its motion, USIC argues that it is entitled to summary judgment on this claim because the Punitive Damages Exclusion unambiguously precludes coverage for any claims or demands for the payment of punitive damages. [DN 15 at 24.]

USIC correctly asserts that Kentucky courts routinely uphold similar exclusions. *See, e.g.*, *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594, 596–97 (Ky. Ct. App. 2011) ("The insurance agreement specifically excludes coverage for punitive damages . . . There is no ambiguity in this portion of the insurance agreement and, therefore, no need for interpretation or construction of the contract's terms . . . The insurance agreement does not cover claims against Abundance for punitive damages."); *Deerfield Ins. Co. v. Warren Cty. Fiscal Court ex rel. City Cty. Planning Comm'n*, 88 S.W.3d 867, 875 (Ky. Ct. App. 2002) ("We hold that Deerfield is entitled to enforcement of the policy's specific exclusion of punitive damages from coverage."). In *Ken Bar*, cited above, this Court applied both an assault and battery exclusion and a punitive damages exclusion. The Court explained: "The Underlying Action's third claim is for punitive damages. This claim is excluded under [ ] the assault and battery exclusion. The claim is also excluded under the punitive damages exclusion, which states that '[t]his insurance does not apply to ... [c]laims or demands for the payment of punitive, exemplary or treble damages.'" *Ken Bar, LLC*, 2009 WL 2602809, at *5.

In response to USIC's motion, Cole's Place states that, "[w]hile arguably, any '[c]laims or demands for payment for punitive…damages' are excluded under the [Policy], it is not arguable that *defense* against such claims is not specifically excluded from coverage." [DN 19-1 at 13.] Further, Cole's place contends that "the punitive damages exclusion itself is more narrow in scope and breadth than other exclusions contained in the policy" and that, despite the fact that USIC does not have a duty to indemnify Cole's Place for any punitive damages, the "duty to defend is broader than [the] duty to indemnify." [*Id.* at 13–14.] Although Cole's Place is correct as to these general principles, its argument is ultimately unsuccessful in light of the fact that the Court has already found that USIC has no duty to defend Cole's Place in the State Court Action because all of the claims in that suit fall under the Policy's Assault and Battery Exclusion. Accordingly, USIC neither has a duty to indemnify Cole's Place for any demands of punitive damages, nor any duty to defend Cole's Place against such claims. Therefore, USIC's motion for summary judgment as to its second claim is granted.

### C. Cole's Place's Counterclaims

Finally, USIC moves for summary judgment on Cole's Place's counterclaims for breach of contract and bad faith. [DN 15 at 25.] In its answer, Cole's Place made a total of four counterclaims. [DN 10 (Answer, Affirmative Defenses, and Counterclaims**)**.] The first two counterclaims request that the Court render a declaratory judgment finding that the Assault and Battery and Punitive Damages Exclusions do not apply. [*Id.* at 12–13.] It is axiomatic that, because the Court has found in USIC's favor on its claims for declaratory relief finding that those two exclusions do apply, Cole's Place's claims for the opposite declaratory relief fail.

Cole's Place's third counterclaim alleges that, by refusing to indemnify, USIC "has breached the insurance policy contract." [*Id.* at 14.] As an initial matter, because "USIC has been

defending Cole's Place under the Policy and there is currently no judgment against Cole's Place for which USIC could be required to provide indemnity," [DN 15 at 25 n.32], it is not the case at all that USIC has "refused to indemnify." Moreover, however, because the Court has found that USIC has no duty to defend Cole's Place in the State Court Action, nor any duty to indemnify it for any judgments rendered against it, refusing to do so does not constitute a breach of contract. To succeed on a breach of contract claim under Kentucky law, merely "establishing the existence of a contract is not sufficient." *Barnett v. Mercy Health Partners-Lourdes, Inc.*, 233 S.W.3d 723, 727 (Ky. Ct. App. 2007). Rather, Cole's Place "must also prove that [USIC] breached the contract." *Id.* Without demonstrating a duty to defend or indemnity, Cole's Place cannot demonstrate a breach. Therefore, USIC is entitled to summary judgment on this counterclaim.

Cole's Place's fourth counterclaim alleges that USIC's "denial of coverage under the policy was made in bad faith." [*Id.*] However, Kentucky law is clear that "there can be no claim for bad faith where a contractual obligation for coverage is lacking." *Kentucky Nat. Ins. Co. v. Shaffer*, 155 S.W.3d 738, 741 (Ky. Ct. App. 2004), *as modified* (Feb. 4, 2005). Because the Court finds that the Policy's Assault and Battery and Punitive Damages Exclusions apply here to preclude coverage and a duty to defend, there can be no bad faith. Accordingly, USIC is entitled to summary judgment on this counterclaim as well.

CONCLUSION

For the reasons discussed in detail above, **IT IS HEREBY ORDERED** as follows:

(1) The Court finds that the exercise of its jurisdiction over this declaratory judgment action pursuant to 28 U.S.C. § 2201 is proper. Accordingly, Defendant Cole's Place's motion to dismiss, [DN 16], is **DENIED**.

(2) Plaintiff United Specialty Insurance Company's motion for summary judgment, [DN 15], is **GRANTED**.

All claims in the above-captioned action shall be **DISMISSED WITH PREJUDICE**, and the Clerk is directed to close the case. The Court will enter a separate Order and Judgment consistent with this Memorandum Opinion.

Date:

cc:    Counsel